# LEOCAL *v.* ASHCROFT, ATTORNEY GENERAL, ET AL.

No. 03–583. Argued October 12, 2004—Decided November 9, 2004

REHNQUIST, C. J., delivered the opinion for a unanimous Court.

*J. Sedwick Sollers III* argued the cause for petitioner. With him on the briefs were *Patricia L. Maher* and *Michael J. Ciatti.*

*Dan Himmelfarb* argued the cause for respondents. With him on the brief were *Acting Solicitor General Clement, Assistant Attorney General Keisler, Deputy Solicitors General Dreeben* and *Kneedler, Donald E. Keener,* and *Greg D. Mack.**

CHIEF JUSTICE REHNQUIST delivered the opinion of the Court.

Petitioner Josue Leocal, a Haitian citizen who is a lawful permanent resident of the United States, was convicted in 2000 of driving under the influence of alcohol (DUI) and causing serious bodily injury, in violation of Florida law. See Fla. Stat. § 316.193(3)(c)(2) (2003). Classifying this conviction as a "crime of violence" under 18 U. S. C. § 16, and therefore an "aggravated felony" under the Immigration and Nationality Act (INA), an Immigration Judge and the Board of Immigration Appeals (BIA) ordered that petitioner be deported pursuant to § 237(a) of the INA. The Court of Ap-

---

*Briefs of *amici curiae* urging reversal were filed for Citizens and Immigrants for Equal Justice et al. by *Carmine D. Boccuzzi, Jr.;* for the Midwest Immigrant & Human Rights Center by *Shashank S. Upadhye;* and for the National Association of Criminal Defense Lawyers et al. by *Paul A. Engelmayer, Douglas F. Curtis, Joshua L. Dratel, Lucas Guttentag, Steven R. Shapiro, Robin L. Goldfaden, Lory Diana Rosenberg, Jeanne A. Butterfield, Marianne Yang,* and *Manuel D. Vargas.*

peals for the Eleventh Circuit agreed, dismissing petitioner's petition for review. We disagree and hold that petitioner's DUI conviction is not a crime of violence under 18 U. S. C. § 16.

Petitioner immigrated to the United States in 1980 and became a lawful permanent resident in 1987. In January 2000, he was charged with two counts of DUI causing serious bodily injury under Fla. Stat. § 316.193(3)(c)(2), after he caused an accident resulting in injury to two people. He pleaded guilty to both counts and was sentenced to 2½ years in prison.

In November 2000, while he was serving his sentence, the Immigration and Naturalization Service (INS) initiated removal proceedings against him pursuant to § 237(a) of the INA. Under that provision, "[a]ny alien who is convicted of an aggravated felony . . . is deportable" and may be removed upon an order of the Attorney General. 66 Stat. 201, 8 U. S. C. § 1227(a)(2)(A)(iii). Section 101(a)(43) of the INA defines "aggravated felony" to include, *inter alia*, "a crime of violence (as defined in section 16 of title 18, but not including a purely political offense) for which the term of imprisonment [is] at least one year."[1] 8 U. S. C. § 1101(a)(43)(F) (footnote omitted). Title 18 U. S. C. § 16, in turn, defines the term "crime of violence" to mean:

---

[1] Congress first made commission of an aggravated felony grounds for an alien's removal in 1988, and it defined the term to include offenses such as murder, drug trafficking crimes, and firearm trafficking offenses. See Anti-Drug Abuse Act of 1988, §§ 7342, 7344, 102 Stat. 4469, 4470. Since then, Congress has frequently amended the definition of aggravated felony, broadening the scope of offenses which render an alien deportable. See, *e. g.,* Antiterrorism and Effective Death Penalty Act of 1996, § 440(e), 110 Stat. 1277 (adding a number of offenses to § 101(a)(43) of the INA); Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), § 321, 110 Stat. 3009–627 (same). The inclusion of any "crime of violence" as an aggravated felony came in 1990. See Immigration Act of 1990, § 501, 104 Stat. 5048.

"(a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

"(b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."

Here, the INS claimed that petitioner's DUI conviction was a "crime of violence" under § 16, and therefore an "aggravated felony" under the INA.

In October 2001, an Immigration Judge found petitioner removable, relying upon the Eleventh Circuit's decision in *Le v. United States Attorney General*, 196 F. 3d 1352 (1999) *(per curiam)*, which held that a conviction under the Florida DUI statute qualified as a crime of violence. The BIA affirmed.[2] Petitioner completed his sentence and was removed to Haiti in November 2002. In June 2003, the Court of Appeals for the Eleventh Circuit dismissed petitioner's petition for review, relying on its previous ruling in *Le, supra*.[3] App. to

_____

[2] When petitioner first appealed, the BIA's position was that a violation of DUI statutes similar to Florida's counted as a crime of violence under 18 U. S. C. § 16. See, *e. g., Matter of Puente-Salazar*, 22 I. & N. Dec. 1006, 1012–1013 (BIA 1999) (en banc). Before petitioner received a decision from his appeal (due to a clerical error not relevant here), the BIA in another case reversed its position from *Puente-Salazar* and held that DUI offenses that do not have a *mens rea* of at least recklessness are not crimes of violence within the meaning of § 16. See *Matter of Ramos*, 23 I. & N. Dec. 336, 346 (BIA 2002) (en banc). However, because the BIA held in *Ramos* that it would "follow the law of the circuit in those circuits that have addressed the question whether driving under the influence is a crime of violence," *id.*, at 346–347, and because it found the Eleventh Circuit's ruling in *Le* controlling, it affirmed the Immigration Judge's removal order. See App. to Pet. for Cert. 1a–4a.

[3] Pursuant to the IIRIRA, the Eleventh Circuit was without jurisdiction to review the BIA's removal order in this case if petitioner was "removable by reason of having committed" certain criminal offenses, including those covered as an "aggravated felony." See 8 U. S. C. § 1252(a)(2)(C). Because the Eleventh Circuit held that petitioner's conviction was such an

6

Pet. for Cert. 5a–7a.   We granted certiorari, 540 U. S. 1176 (2004), to resolve a conflict among the Courts of Appeals on the question whether state DUI offenses similar to the one in Florida, which either do not have a *mens rea* component or require only a showing of negligence in the operation of a vehicle, qualify as a crime of violence.   Compare *Le, supra,* at 1354; and *Omar* v. *INS,* 298 F. 3d 710, 715–718 (CA8 2002), with *United States* v. *Trinidad-Aquino,* 259 F. 3d 1140, 1145–1146 (CA9 2001); *Dalton* v. *Ashcroft,* 257 F. 3d 200, 205–206 (CA2 2001); *Bazan-Reyes* v. *INS,* 256 F. 3d 600, 609–611 (CA7 2001); and *United States* v. *Chapa-Garza,* 243 F. 3d 921, 926–927 (CA5), amended, 262 F. 3d 479 (CA5 2001) *(per curiam);* see also *Ursu* v. *INS,* 20 Fed. Appx. 702 (CA9 2001) (following *Trinidad-Aquino, supra,* and ruling that a violation of the Florida DUI statute at issue here and in *Le* does not count as a "crime of violence").   We now reverse the Eleventh Circuit.

* * *

Title 18 U. S. C. § 16 was enacted as part of the Comprehensive Crime Control Act of 1984, which broadly reformed the federal criminal code in such areas as sentencing, bail, and drug enforcement, and which added a variety of new violent and nonviolent offenses.   § 1001(a), 98 Stat. 2136. Congress employed the term "crime of violence" in numerous places in the Act, such as for defining the elements of particular offenses, see, *e. g.,* 18 U. S. C. § 1959 (prohibiting threats to commit crimes of violence in aid of racketeering activity), or for directing when a hearing is required before a charged individual can be released on bail, see § 3142(f) (requiring a pretrial detention hearing for those alleged to have committed a crime of violence).   Congress therefore provided in § 16 a general definition of the term "crime of violence" to be used throughout the Act.   See § 1001(a),

---

offense, it concluded that it had no jurisdiction to consider the removal order.

98 Stat. 2136. Section 16 has since been incorporated into a variety of statutory provisions, both criminal and noncriminal.[4]

Here, pursuant to § 237(a) of the INA, the Court of Appeals applied § 16 to find that petitioner's DUI conviction rendered him deportable. In determining whether petitioner's conviction falls within the ambit of § 16, the statute directs our focus to the "offense" of conviction. See § 16(a) (defining a crime of violence as "*an offense* that has *as an element* the use . . . of physical force against the person or property of another" (emphasis added)); § 16(b) (defining the term as "*any other offense* that is a felony and that, *by its nature,* involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense" (emphasis added)). This language requires us to look to the elements and the nature of the offense of conviction, rather than to the particular facts relating to petitioner's crime.

Florida Stat. § 316.193(3)(c)(2) makes it a third-degree felony for a person to operate a vehicle while under the influence and, "by reason of such operation, caus[e] . . . [s]erious bodily injury to another." The Florida statute, while it requires proof of causation of injury, does not require proof of any particular mental state. See *State* v. *Hubbard*, 751 So. 2d 552, 562–564 (Fla. 1999) (holding, in the context of a DUI manslaughter conviction under § 316.193, that the stat-

---

[4] For instance, a number of statutes criminalize conduct that has as an element the commission of a crime of violence under § 16. See, *e. g.,* 18 U. S. C. § 842(p) (prohibiting the distribution of information relating to explosives, destructive devices, and weapons of mass destruction in relation to a crime of violence). Other statutory provisions make classification of an offense as a crime of violence consequential for purposes of, *inter alia,* extradition and restitution. See §§ 3181(b), 3663A(c). And the term "crime of violence" under § 16 has been incorporated into a number of noncriminal enactments. See, *e. g.,* 8 U. S. C. § 1227(a)(2)(A)(iii) (rendering an alien deportable for committing a crime of violence, as petitioner is charged here).

8

ute does not contain a *mens rea* requirement). Many States have enacted similar statutes, criminalizing DUI causing serious bodily injury or death without requiring proof of any mental state,[5] or, in some States, appearing to require only proof that the person acted negligently in operating the vehicle.[6] The question here is whether § 16 can be interpreted to include such offenses.

Our analysis begins with the language of the statute. See *Bailey* v. *United States*, 516 U. S. 137, 144 (1995). The plain text of § 16(a) states that an offense, to qualify as a crime of violence, must have "as an element the use, attempted use, or threatened use of physical force against the person or property of another." We do not deal here with an *at-*

---

[5] See, *e. g.*, Ala. Code § 13A–6–20(a)(5) (West 1994); Colo. Rev. Stat. § 18–3–205(1)(b)(I) (Lexis 2003); Conn. Gen. Stat. § 53a–60d(a) (2003); Ga. Code Ann. § 40–6–394 (Lexis 2004); Idaho Code § 18–8006(1) (Lexis 2004); Ill. Comp. Stat. Ann., ch. 625, § 5/11–501(d)(1)(C) (West 2002); Ind. Code § 9–30–5–4 (1993); Iowa Code § 707.6A(4) (2003); Ky. Rev. Stat. Ann. §§ 189A.010(1) and (11)(c) (Lexis Supp. 2004); Me. Rev. Stat. Ann., Tit. 29–A, § 2411(1–A)(D)(1) (West Supp. 2003); Mich. Comp. Laws Ann. § 257.625(5) (West Supp. 2004); Neb. Rev. Stat. § 60–6,198(1) (2002 Cum. Supp.); N. H. Rev. Stat. Ann. §§ 265:82–a(I)(b) and (II)(b) (West 2004); N. J. Stat. Ann. § 2C:12–1(c) (West Supp. 2003); N. M. Stat. Ann. §§ 66–8–101(B) and (C) (2004); N. D. Cent. Code § 39–09–01.1 (Lexis 1997); Ohio Rev. Code Ann. § 2903.08(A)(1)(a) (Lexis 2003); Okla. Stat. Ann., Tit. 47, § 11–904(B)(1) (West 2001); 75 Pa. Cons. Stat. § 3804(b) (Supp. 2003); R. I. Gen. Laws § 31–27–2.6(a) (Lexis 2002); Tex. Penal Code Ann. § 49.07(a)(1) (West 2003); Vt. Stat. Ann., Tit. 23, § 1210(f) (Lexis Supp. 2004); Wash. Rev. Code § 46.61.522(1)(b) (1994); Wis. Stat. § 940.25(1) (1999–2000); Wyo. Stat. § 31–5–233(h) (Lexis 2003).

[6] See, *e. g.*, Cal. Veh. Code Ann. § 23153 (West 2000); Del. Code Ann., Tit. 11, §§ 628(2), 629 (Lexis 1995); La. Stat. Ann. §§ 14:39.1(A), 14:39.2(A) (West 1997 and Supp. 2004); Md. Crim. Law Code Ann. §§ 3–211(c) and (d) (Lexis 2004); Miss. Code Ann. § 63–11–30(5) (Lexis 2004); Mo. Ann. Stat. § 565.060.1(4) (West 2000); Mont. Code Ann. § 45–5–205(1) (2003); Nev. Rev. Stat. § 484.3795(1) (2003); S. C. Code Ann. § 56–5–2945(A)(1) (2003); S. D. Codified Laws § 22–16–42 (West Supp. 2003); Utah Code Ann. §§ 41–6–44(3)(a)(ii)(A) and (3)(b) (Lexis Supp. 2004); W. Va. Code § 17C–5–2(c) (Lexis 2004).

*tempted* or *threatened* use of force. Petitioner contends that his conviction did not require the "use" of force against another person because the most common employment of the word "use" connotes the *intentional* availment of force, which is not required under the Florida DUI statute. The Government counters that the "use" of force does not incorporate any *mens rea* component, and that petitioner's DUI conviction necessarily includes the use of force. To support its position, the Government dissects the meaning of the word "use," employing dictionaries, legislation, and our own case law in contending that a use of force may be negligent or even inadvertent.

Whether or not the word "use" alone supplies a *mens rea* element, the parties' primary focus on that word is too narrow. Particularly when interpreting a statute that features as elastic a word as "use," we construe language in its context and in light of the terms surrounding it. See *Smith* v. *United States*, 508 U. S. 223, 229 (1993); *Bailey, supra*, at 143. The critical aspect of § 16(a) is that a crime of violence is one involving the "use . . . of physical force *against the person or property of another.*" (Emphasis added.) As we said in a similar context in *Bailey*, "use" requires active employment. 516 U. S., at 145. While one may, in theory, actively employ *something* in an accidental manner, it is much less natural to say that a person actively employs physical force against another person by accident. Thus, a person would "use . . . physical force against" another when pushing him; however, we would not ordinarily say a person "use[s] . . . physical force against" another by stumbling and falling into him. When interpreting a statute, we must give words their "ordinary or natural" meaning. *Smith, supra,* at 228. The key phrase in § 16(a)—the "use . . . of physical force against the person or property of another"—most naturally suggests a higher degree of intent than negligent or merely accidental conduct. See *United States* v. *Trinidad-Aquino*, 259 F. 3d, at 1145; *Bazan-Reyes* v. *INS*, 256 F. 3d, at 609.

Petitioner's DUI offense therefore is not a crime of violence under § 16(a).

Neither is petitioner's DUI conviction a crime of violence under § 16(b). Section 16(b) sweeps more broadly than § 16(a), defining a crime of violence as including "any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." But § 16(b) does not thereby encompass all negligent misconduct, such as the negligent operation of a vehicle. It simply covers offenses that naturally involve a person acting in disregard of the risk that physical force might be used against another in committing an offense. The reckless disregard in § 16 relates *not* to the general conduct or to the possibility that harm will result from a person's conduct, but to the risk that the use of physical force against another might be required in committing a crime.[7] The classic example is burglary. A burglary would be covered under § 16(b) *not* because the offense can be committed in a generally reckless way or because someone may be injured, but because burglary, by its nature, involves a substantial risk that the burglar will use force against a victim in completing the crime.

---

[7] Thus, § 16(b) plainly does not encompass all offenses which create a "substantial risk" that injury will result from a person's conduct. The "substantial risk" in § 16(b) relates to the use of force, not to the possible effect of a person's conduct. Compare § 16(b) (requiring a "substantial risk that physical force against the person or property of another may be used") with United States Sentencing Commission, Guidelines Manual § 4B1.2(a)(2) (Nov. 2003) (in the context of a career-offender sentencing enhancement, defining "crime of violence" as meaning, *inter alia,* "conduct that presents a serious potential risk of physical injury to another"). The risk that an accident may occur when an individual drives while intoxicated is simply not the same thing as the risk that the individual may "use" physical force against another in committing the DUI offense. See, *e. g., United States* v. *Lucio-Lucio,* 347 F. 3d 1202, 1205–1207 (CA10 2003); *Bazan-Reyes* v. *INS,* 256 F. 3d 600, 609–610 (CA7 2001).

Thus, while § 16(b) is broader than § 16(a) in the sense that physical force need not actually be applied, it contains the same formulation we found to be determinative in § 16(a): the use of physical force against the person or property of another. Accordingly, we must give the language in § 16(b) an identical construction, requiring a higher *mens rea* than the merely accidental or negligent conduct involved in a DUI offense. This is particularly true in light of § 16(b)'s requirement that the "substantial risk" be a risk of using physical force against another person "in the course of committing the offense." In no "ordinary or natural" sense can it be said that a person risks having to "use" physical force against another person in the course of operating a vehicle while intoxicated and causing injury.

In construing both parts of § 16, we cannot forget that we ultimately are determining the meaning of the term "crime of violence." The ordinary meaning of this term, combined with § 16's emphasis on the use of physical force against another person (or the risk of having to use such force in committing a crime), suggests a category of violent, active crimes that cannot be said naturally to include DUI offenses. Cf. *United States* v. *Doe*, 960 F. 2d 221, 225 (CA1 1992) (Breyer, C. J.) (observing that the term "violent felony" in 18 U. S. C. § 924(e) (2000 ed. and Supp. II) "calls to mind a tradition of crimes that involve the possibility of more closely related, active violence"). Interpreting § 16 to encompass accidental or negligent conduct would blur the distinction between the "violent" crimes Congress sought to distinguish for heightened punishment and other crimes. See *United States* v. *Lucio-Lucio*, 347 F. 3d 1202, 1205–1206 (CA10 2003).

Section 16 therefore cannot be read to include petitioner's conviction for DUI causing serious bodily injury under Florida law.[8] This construction is reinforced by Congress' use

---

[8] Even if § 16 lacked clarity on this point, we would be constrained to interpret any ambiguity in the statute in petitioner's favor. Although here we deal with § 16 in the deportation context, § 16 is a criminal statute,

of the term "crime of violence" in § 101(h) of the INA, which was enacted in 1990. See Foreign Relations Authorization Act, Fiscal Years 1990 and 1991, § 131, 104 Stat. 31 (hereinafter FRAA). Section 212(a)(2)(E) of the INA renders inadmissible any alien who has previously exercised diplomatic immunity from criminal jurisdiction in the United States after committing a "serious criminal offense." 8 U. S. C. § 1182(a)(2)(E). Section 101(h) defines the term "serious criminal offense" to mean:

"(1) any felony;

"(2) any crime of violence, as defined in section 16 of title 18; *or*

"(3) any crime of reckless driving or of driving while intoxicated or under the influence of alcohol or of prohibited substances if such crime involves personal injury to another." 8 U. S. C. § 1101(h) (emphasis added).

Congress' separate listing of the DUI-causing-injury offense from the definition of "crime of violence" in § 16 is revealing. Interpreting § 16 to include DUI offenses, as the Government urges, would leave § 101(h)(3) practically devoid of significance. As we must give effect to every word of a statute wherever possible, see *Duncan* v. *Walker*, 533 U. S. 167, 174 (2001), the distinct provision for these offenses under § 101(h) bolsters our conclusion that § 16 does not itself encompass DUI offenses.[9]

---

and it has both criminal and noncriminal applications. Because we must interpret the statute consistently, whether we encounter its application in a criminal or noncriminal context, the rule of lenity applies. Cf. *United States* v. *Thompson/Center Arms Co.*, 504 U. S. 505, 517–518 (1992) (plurality opinion) (applying the rule of lenity to a tax statute, in a civil setting, because the statute had criminal applications and thus had to be interpreted consistently with its criminal applications).

[9] This point carries significant weight in the particular context of this case. Congress incorporated § 16 as an aggravated felony under § 101(a)(43)(F) of the INA in 1990. See Immigration Act of 1990, § 501, 104 Stat. 5048 (Nov. 29, 1990). Congress enacted § 101(h), with its incor-

This case does not present us with the question whether a state or federal offense that requires proof of the *reckless* use of force against the person or property of another qualifies as a crime of violence under 18 U. S. C. § 16.   DUI statutes such as Florida's do not require any mental state with respect to the use of force against another person, thus reaching individuals who were negligent or less.   Drunk driving is a nationwide problem, as evidenced by the efforts of legislatures to prohibit such conduct and impose appropriate penalties.   But this fact does not warrant our shoehorning it into statutory sections where it does not fit.   The judgment of the United States Court of Appeals for the Eleventh Circuit is therefore reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*

---

poration of § 16 *and* a separate provision covering DUI-causing-injury offenses, just nine months earlier.   See FRAA, § 131, 104 Stat. 31 (Feb. 16, 1990).   That Congress distinguished between a crime of violence and DUI-causing-injury offenses (and included both) in § 101(h), but did not do so shortly thereafter in making only a crime of violence an aggravated felony under § 101(a)(43)(F), strongly supports our construction of § 16.