**Pedro AGUIAR, Petitioner,**

v.

**Alberto R. GONZÁLES, United States Attorney General, Respondent.**

No. 04–2735.

United States Court of Appeals, First Circuit.

Heard Dec. 9, 2005.

Decided Feb. 16, 2006.

Randy Olen, for petitioner.

Anthony C. Payne, Attorney, United States Department of Justice, Civil Division, Office of Immigration Litigation, with whom Peter D. Keisler, Assistant Attorney General, Civil Division, and Ernesto H. Molina, Senior Litigation Counsel, were on brief, for respondent.

Before TORRUELLA, Circuit Judge, COFFIN, Senior Circuit Judge, and HOWARD, Circuit Judge.

TORRUELLA, Circuit Judge.

Petitioner Pedro Aguiar asks us to review a decision of the Board of Immigration Appeals ("BIA") finding him removable for being an alien convicted of an aggravated felony. We affirm the decision of the BIA and dismiss the petition.

## I.

Aguiar is a native and citizen of Portugal who was admitted to the United States in 1985 as a lawful permanent resident. Aguiar was eight years old at the time. On January 13, 1997, Aguiar was convicted in Rhode Island state court of four counts of third degree sexual assault.[1] *See* R.I. Gen. Laws § 11–37–6 (1997) ("Section 11–37–6").[2] He was sentenced to a two-year suspended term of imprisonment and two years of probation.

On November 20, 2003, the Department of Homeland Security ("DHS") issued a Notice to Appear charging Aguiar with being removable pursuant to § 237(a)(2)(A)(iii) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(2)(A)(iii), for being an alien convicted of an aggravated felony. The INA defines "aggravated felony" as "a crime of violence (as defined in section 16 of Title 18, but not including a purely political offense) for which the term of imprisonment [is] at least one year." 8 U.S.C. § 1101(a)(43)(F). 18 U.S.C. § 16, in turn, provides that

> The term "crime of violence" means—
>
> (a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

The offenses for which Aguiar was convicted did not have as an element the use,

attempted use, or threatened use of force, and Section 16(a) is therefore inapplicable. In order for the offenses to be considered "crimes of violence," they must fall under Section 16(b).

On May 17, 2004, Aguiar appeared before an Immigration Judge. The Immigration Judge found that Aguiar's conviction of third degree sexual assault in Rhode Island constituted a "crime of violence" pursuant to Section 16(b), and therefore constituted an "aggravated felony" under 8 U.S.C. § 1101(a)(43)(F). The Immigration Judge ordered that Aguiar be removed to Portugal. Aguiar appealed to the BIA, which affirmed the Immigration Judge on November 29, 2004. The BIA began by citing our decision in *United States v. Sacko*, 247 F.3d 21 (1st Cir.2001) ("*Sacko II* "), where we found that an appellant's conviction under Section 11–37–6 constituted a "violent felony" under the Armed Career Criminal Act ("ACCA"). The ACCA defines "violent felony" as a crime that, among other things, "involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B). The BIA reasoned that, just as girls between the ages of fourteen and sixteen run the risk of physical injury during sexual intercourse with a man over eighteen, there is also a substantial risk that physical force may be used during such acts. The BIA affirmed the Immigration Judge on these grounds, and Aguiar timely appealed.

## II.

■ Under INA § 242(a)(2)(C), 8 U.S.C. § 1252(a)(2)(C), as amended by the

---

1. Aguiar waived his right to trial and entered a plea of *nolo contendere* or guilty.

2. Section 11–37–6 states:

   A person is guilty of third degree sexual assault if he or she is over the age of eigh-teen (18) and engaged in sexual penetration with another person over the age of four-teen (14) and under the age of consent, sixteen (16) years of age.

Real ID Act of 2005,[3] "no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense" covered by INA § 237(a)(2)(A)(iii), 8 U.S.C. § 1227(a)(2)(A)(iii). However, under INA § 242(a)(2)(D), 8 U.S.C. § 1252(a)(2)(D), as amended by the Real ID Act, we are not precluded from review of "questions of law raised upon a petition of review filed with an appropriate court of appeals." The question of whether Aguiar's offense constitutes an "aggravated felony" is such a question of law, and therefore have jurisdiction to review it. The issue before us is whether third degree sexual assault under Section 11–37–6 is a "crime of violence" under Section 16(b) and therefore an "aggravated felony" under the INA. Our review is *de novo.* *See United States v. Cordoza–Estrada,* 385 F.3d 56, 57 (1st Cir. 2004). If we find that Aguiar's crime is an aggravated felony, then we must dismiss his petition for lack of jurisdiction.

As we noted above, the BIA based its decision on our opinion in *Sacko II,* where we found that a conviction under Section 11–37–6 constituted a "violent felony" for purposes of the ACCA. Under the ACCA, an offense constitutes a violent felony if it "involves conduct that presents a serious potential risk of *physical injury* to another." 18 U.S.C. § 924(e)(2)(B)(emphasis added). The BIA appeared to equate this definition of "violent felony" with the definition of "crime of violence" in Section 16(b). However, Section 16(b) defines "crime of violence" as "any other offense that is a felony and that, by its nature, involves a substantial risk that *physical force* " will be used during the commission of the offense. 8 U.S.C. § 16(b). Aguiar argues that the two statutes present different standards and that just because an offense is a "violent felony" for ACCA purposes does not necessarily mean that it will be a "crime of violence" for Section 16(b) purposes. We agree. In *Leocal v. Ashcroft,* 543 U.S. 1, 125 S.Ct. 377, 160 L.Ed.2d 271 (2004), the Supreme Court addressed whether driving under the influence was a "crime of violence" for Section 16(b) purposes. In finding that it was not, the Court noted in a footnote that

> § 16(b) plainly does not encompass all offenses which create a "substantial risk" that *injury* will result from a person's conduct. The "substantial risk" in § 16(b) relates to the use of force, not to the possible effect of a person's conduct. Compare § 16(b) (requiring a "substantial risk that physical force against the person or property of another may be used"), with United States Sentencing Commission, Guidelines Manual § 4B1.2(a)(2) (Nov.2003) (in the context of a career-offender sentencing enhancement, defining "crime of violence" as meaning, inter alia, "conduct that presents a serious potential risk of physical injury to another").

*Leocal,* 543 U.S. at 10, 125 S.Ct. 377 n. 7. In sum, while an offense may create a risk of *physical injury* to another and therefore be a "violent felony" under the ACCA, it does not necessarily follow that the offense will involve a substantial risk of the use of *physical force* and therefore be a "crime of violence" under Section 16(b).

■ However, reviewing *de novo,* we believe that the BIA was correct in its conclusion that Aguiar's offense involved a substantial risk of physical force. When

---

**3.** The relevant section of the Real ID Act took effect immediately upon the Real ID Act's enactment on May 11, 2005, and applies to final orders of removal issued "before, on, or after the date of the enactment of this division." Real ID Act of 2005, Pub.L. No. 109–13, Div. B, Section 106(b).

determining whether a particular crime is a "crime of violence" we generally follow what has been termed the "categorical approach," restricting our inquiry to the statutory definition of the offense without regard to the underlying facts. *United States v. Meader,* 118 F.3d 876, 882 (1st Cir.1997).[4] Under this approach, "only the minimum criminal conduct necessary to sustain a conviction under a given statute is relevant." *Chery v. Ashcroft,* 347 F.3d 404, 407 (2d Cir.2003) (internal quotation marks omitted). Given the terms of Section 11–37–6, we must therefore determine whether sexual penetration involving a person who is eighteen and a person one day shy of the age of sixteen involves a substantial risk of the use of physical force. We conclude that it does.

Section 11–37–6 explicitly provides that a child under the age of sixteen is unable to legally consent to the sexual conduct the statute prohibits.[5] The government argues that, because a minor cannot legally consent to the sexual conduct and because of the presumed higher age and experience of the perpetrator, the statute clearly contemplates that a substantial risk of the use of physical force exists in every violation of the statute. Aguiar argues that relatively few instances of sexual conduct contemplated by the statute present a substantial risk of the use of force.

At least seven other circuits have addressed an issue similar to the one before us today. The Second, Fifth, Eighth, Tenth, and Eleventh Circuits have interpreted offenses involving similar statutes to be "crimes of violence"—even if the conduct is factually consensual—because they always involve a substantial risk of the use of physical force. *See Chery,* 347 F.3d at 408 ("Doubtless, cases can be imagined where a defendant's conduct does not create a genuine probability that force will be used, but the *risk* of force remains inherent in the statute.") (emphasis in original); *United States v. Velázquez–Overa,* 100 F.3d 418, 422 (5th Cir. 1996); *Ramsey v. INS,* 55 F.3d 580, 583 (11th Cir.1995); *United States v. Bauer,* 990 F.2d 373, 375 (8th Cir.1993); *United States v. Reyes–Castro,* 13 F.3d 377, 379 (10th Cir.1993). On the other hand, the Seventh and Ninth Circuits have found that not all cases involving violations of similar statutes present a substantial risk that physical force will be used. *See Valencia v. Gonzáles,* 431 F.3d 673, 677 (9th Cir.2005) (stating that, "[w]hen the victim

**4.** In *United States v. Sacko,* 178 F.3d 1, 4–5 (1st Cir.1999)(*"Sacko I"*), we found that, in cases involving statutory rape, it was permissible to go beyond the statutory language and examine the charging documents and jury instructions. In doing so in the instant case, all we glean from the charging documents is that Aguiar was over eighteen and that the victim was between fourteen and sixteen. Because there was no trial, there were no jury instructions. Thus, for the purposes of this case, "our inquiry remains limited to the statutory formulation" of the offense. *United States v. Sherwood,* 156 F.3d 219, 221 (1st Cir.1998).

**5.** In framing the question for us to consider, Aguiar argues that we must examine the "typical" or "ordinary" conduct contemplated by

the statute. Brief for Appellant at 9. He then equates the "ordinary" conduct contemplated by the statute with "consensual sexual conduct between a male on his 18th birthday and a female one day shy of her 16th birthday." *Id.* We assume that Aguiar means "factually consensual," because under the statute it is clear that a minor under the age of sixteen cannot legally consent. In other words, legally, the typical or ordinary conduct contemplated by the statute is not consensual.

However, Aguiar has presented no reason for us to assume that the ordinary conduct contemplated by the statute is factually consensual sexual conduct between teenagers. Indeed, it seems a strained assumption given that the conduct is not legally consensual.

actually consents to the sexual contact, it cannot be reasonably said that there is a substantial risk that physical force" will be used); *Xiong v. INS*, 173 F.3d 601, 607 (7th Cir.1999) (finding that "[a]bsent a substantial age difference," where the defendant engaged in factually consensual sex with his fifteen-year-old girlfriend, the conduct did not involve a substantial risk of the use of physical force). The government urges us to follow the majority of circuits; Aguiar urges us to follow the minority.

After careful consideration, we believe that the analysis of the majority of circuits, particularly that of the Second and the Tenth, is persuasive. We base this decision primarily on the fact that, under the statute, a victim cannot legally consent to the prohibited conduct. Aguiar argues that we must distinguish between factual and legal consent. He argues that, although none of the victims involved in a Section 11–37–6 offense may legally consent, they have often factually consented, in which case the conduct criminalized does not involve the use of force. This was the rationale used by the Seventh and Ninth Circuits in their holdings.

In our view, this argument fails for three reasons. First, if we were to distinguish between "factual" and "legal" consent, then it would effectively eviscerate the statute's clear statement that a person under the age of sixteen cannot consent. In essence, we would be saying that persons under the age of sixteen cannot consent, except when they do consent. The Rhode Island legislature has determined that children under the age of sixteen cannot consent to certain sexual conduct, and we are obliged to follow that determination. Therefore, under Rhode Island law, Aguiar was convicted of engaging in sexual penetration with a person who did not consent.

Second, Aguiar's argument fails to realize that we are not concerned with the actual use of force, but the risk of the use of force. We agree with the Second Circuit that, although a person could be convicted "for [factually] consensual sexual intercourse and force may not be present in all circumstances, the *risk* of the use of force is inherent in each of the offenses set forth in the statute. 'It matters not one whit whether the risk ultimately causes actual harm.' " *Chery*, 347 F.3d at 408 (quoting *United States v. Rodríguez*, 979 F.2d 138, 141 (8th Cir.1992)).[6] As the Fifth Circuit has stated, "it is obvious that such crimes typically occur in close quarters, and are generally perpetrated by an adult upon a victim who is ·... smaller, weaker, and less experienced.... In such circumstances, there is a significant likelihood that physical force may be used to perpetrate the crime." *Velázquez–Overa*, 100 F.3d at 422.[7] We think that analysis applies with equal force here.

Third, we believe that our conclusion is bolstered by the fact that Section 11–37–6 does not criminalize *all* sexual conduct involving a person under the age of sixteen. For example, it does not criminalize sexual conduct between two sixteen-year-olds or a sixteen-year-old and a seventeen-year-old.[8]

---

6. In this regard, the *Chery* court analogized to burglary, which it had held constituted a crime of violence due to the risk of the use of physical force even if "in the particular case the defendant's conduct did not create a risk that force will be used—*i.e.*, entering through a wide-open door when no one is inside." 347 F.3d at 408. We agree with that analogy.

7. *Velázquez–Overa* involved a statute criminalizing sexual conduct with a child younger than seventeen.

8. Thus, it is unlikely that the statute's purpose is to simply keep teenagers from making bad decisions, or to prevent early pregnancies. Absent explanations such as these, we think it

Rather, the statute criminalizes, at a minimum, sexual conduct involving a child one day shy of sixteen *and* an adult who is eighteen. The statute is not just concerned with the age of the victim, but also the age of the perpetrator and the gap between the ages of the parties. On the one hand, the legislature has determined that a child under the age of sixteen cannot legally consent; on the other hand, it has chosen to criminalize only sexual conduct with that child if the other party is at least eighteen. In our view, the reason is obvious:

> A common sense view of the sexual abuse statute, in combination with the legal determination that children are incapable of consent, suggests that when a [person at least eighteen] attempts to sexually [penetrate] a child [between the ages of fourteen and sixteen], there will always be a substantial risk that physical force will be used.

*Reyes–Castro,* 13 F.3d at 379. Given the fact that the victim cannot legally consent, the age gap between the parties, and the fact that the Rhode Island legislature has not chosen to criminalize all sexual conduct involving children between the ages of fourteen and sixteen, we conclude that the statute is concerned about the risk of the use of physical force.

Aguiar also argues that Rhode Island's first and second degree sexual assault statutes cover those instances where there is a risk that physical force will be used and that Section 11–37–6 thus serves another purpose. Those statutes, R.I. Gen. Laws §§ 11–37–2 & 11–37–4, criminalize sexual penetration or contact if, among other

things, the accused actually uses force or coercion, or if there are certain aggravating factors, such as the mental disability of the victim. According to Aguiar, these two statutes cover the instances where there is a substantial risk of the use of force, while § 11–37–6 proscribes mostly consensual conduct where the risk of force is low. We disagree. The fact that Rhode Island's first and second degree sexual assault laws criminalize sexual conduct where the accused actually uses force or there are certain aggravating factors in no way means that the legislature was not concerned about the risk of the use of force when it enacted Section 11–37–6. If anything, it shows that, in enacting Section 11–37–6, the legislature, having already criminalized conduct involving the actual use of force, saw fit to criminalize certain conduct where there was a risk of the use of force, even if no force was actually used.

In sum, Section 11–37–6 criminalizes sexual conduct between someone at least eighteen and someone between fourteen and sixteen, who is by definition not able to consent to the sexual conduct. In our view, the plain motivation for the statute is the risk that physical force may be used by the older perpetrator. Thus, we believe that, when a victim is unable to consent, the proscribed conduct *"inherently"* involves a substantial risk that physical force may be used in the course of committing the offense." *Chery,* 347 F.3d at 408 (emphasis in original). Because of this inherent risk of force, Aguiar's offenses constituted crimes of violence for purposes of Section 16(b), and aggravated felonies for purposes of the INA.[9]

---

more likely that the statute is concerned about the risk of the use of physical force in situations involving sexual conduct between a minor under sixteen and an adult at least eighteen.

9. We wish to note that, at first, it may seem unfair to deport a person for an action that they committed while he was fairly young on account of what amounts to a legal fiction: that the minor involved could not consent. However, the Rhode Island legislature has

### III.

For the foregoing reasons, we affirm the BIA's decision that Aguiar was convicted for an aggravated felony and we dismiss the petition.

*Dismissed.*

made that determination, and we do not have the prerogative to alter its presumably rational assessment of maturity.