# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-11-00120-CR

**Ramiro Martinez Espino, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT
## NO. D-1-DC-10-907303, HONORABLE MICHAEL LYNCH, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Ramiro Espino was convicted of the crime of driving while intoxicated and was sentenced to prison for two years. On appeal, Espino contends that he was denied his right to effective assistance of counsel during a pre-trial hearing in which he rejected a plea agreement offered by the State. We will affirm the district court's judgment of conviction.

## BACKGROUND

In 2010, Espino was charged with the offense of driving while intoxicated. Prior to his arrest in this case, Espino had been convicted of two separate counts of driving while intoxicated as well as possession of a controlled substance. At the time of trial, Espino was subject to an immigration hold and was scheduled to appear before an immigration court after the trial. During a pre-trial hearing, the State explained that it planned to offer a plea agreement in which

it would charge Espino with a class A misdemeanor offense for driving while intoxicated and would recommend that his sentence be limited to the time that he had already served in jail.

After the State made its offer, the district court explained to Espino that the State was planning on reducing his charge "to a misdemeanor. If you plead guilty, your sentence will be the time you spent in jail, so you will be released from this charge today." In addition, the district court informed Espino of the consequences for pleading guilty and stated that he had "the right to plead guilty and accept the offer, or you can plead not guilty and you can have a trial." After hearing the district court's explanation, Espino, himself, asked whether the State might make an alternative offer for public intoxication or for reckless driving. In attempting to explain why Espino requested a different offer, his attorneys stated that due to his immigration hold, he was scheduled to appear before an immigration court and that "[h]aving a third DWI conviction may be treated as a felony in the federal system," apparently referring to immigration consequences. In addition, Espino's attorneys stated that "[w]e are all sort of playing blind man's bluff because this is hard for us to accurately advise him as to how he would be treated having a third DWI conviction," again apparently referring to immigration consequences. Once Espino's attorneys finished their remarks, the State refused to modify the terms of the plea agreement that it offered.

After hearing Espino's concerns, the district court responded, "It is your decision, Mr. Espino, to plead guilty or not guilty, whatever you want. . . . So the district attorney says if you want to plead guilty to a Class A misdemeanor, they would recommend a sentence of five months in the county jail, which means the case would be over today, but they are not willing to go with a [lesser offense]." Ultimately, Espino pleaded not guilty and elected to have a trial.

2

At the end of the trial, the district court concluded that Espino was guilty of felony driving while intoxicated. *See* Tex. Penal Code Ann. § 49.04 (West Supp. 2012) (defining crime of driving while intoxicated); *id.* § 49.09 (West Supp. 2012) (stating that driving while intoxicated is felony if individual has been convicted of driving while intoxicated on two prior occasions). After reviewing Espino's pre-sentence investigation report during the punishment hearing, the district court imposed a sentence of two years in prison. Shortly after receiving his sentence, Espino filed a motion for a new trial, which was denied by the district court.

Espino appeals the district court's judgment.

**DISCUSSION**

In his appeal, Espino alleges that he did not receive effective assistance of counsel when he was deciding whether to accept the plea bargain offered by the State. Specifically, Espino argues that his attorney did not properly inform him "of the consequences, negative or otherwise, of accepting a third misdemeanor" driving-while-intoxicated conviction. Consequently, Espino insists that he "was unable to knowingly consider the State's offer of a misdemeanor with a sentence of time already served."

To establish an ineffective-assistance-of-counsel claim, a defendant must show two things. First, the "defendant must show that counsel's performance was deficient." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In other words, the defendant must show that his "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* To establish this, the defendant "must prove, by a preponderance of the evidence, that his counsel's representation fell below the objective standard of professional

3

norms." *Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002); *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002). "Appellate review of defense counsel's representation is highly deferential and presumes that counsel's actions fell within the wide range of reasonable and professional assistance." *Bone*, 77 S.W.3d at 833. For that reason, to establish that a deficient performance occurred, a defendant must show that his counsel's performance fell below objective standards and must also rebut the presumption that the actions were based on sound trial strategy. *Strickland*, 466 U.S. at 689.

"Second, the defendant must show that the deficient performance prejudiced the defense." *Id.* at 687. Stated differently, the defendant must show that his "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* A defendant may establish prejudice if he can "show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* In the plea-agreement context, "a defendant must show the outcome of the plea process would have been different with competent advice." *Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012). When a defendant argues that improper advice caused him to reject a plea and proceed to trial, he "must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court, . . . that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." *Id.* at 1385.

To be entitled to relief based on an ineffective-assistance claim, the defendant must prove both elements listed above. *Thompson*, 9 S.W.3d at 813. An ineffective-assistance

4

analysis "must be made according to the facts of each case." *Id.* Any alleged ineffectiveness must be "firmly founded in the record." *Id.* "An appellate court looks to the totality of the representation and the particular circumstances of each case in evaluating the effectiveness of counsel." *Id.* However, "it is possible that a single egregious error of omission or commission" can constitute ineffective assistance. *Id.*

In making his argument, Espino primarily relies on *Padilla v. Kentucky*, 130 S. Ct. 1473 (2010). In that case, the Supreme Court explained that for noncitizen defendants, "[t]he weight of prevailing professional norms supports the view that counsel must advise her client regarding the risk of deportation." *Id.* at 1482. If the governing law "is not succinct and straightforward," an attorney "need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences. But when the deportation consequence is truly clear, . . . the duty to give correct advice is equally clear." *Id.* at 1483. In light of those statements, Espino contends that the effect of a conviction for driving while intoxicated "on the question of deportability appears to have a clear answer." In particular, he asserts that driving while intoxicated is not specifically listed in the governing federal statute setting out crimes for which someone may be deported. *See* 8 U.S.C.A. § 1227(a)(2) (West 2005 & Supp. 2012) (listing various crimes, including crimes of moral turpitude, aggravated felonies, possession of controlled substances, and domestic violence). For that reason, Espino insists that his attorneys had a clear responsibility to advise him that pleading guilty to another driving-while-intoxicated charge would not result in his deportation.

Initially, we note that neither in the trial court nor in his appellate brief did Espino make any claim regarding the propriety of his presence in the United States. In fact, in his brief, Espino states that the record is unclear regarding his "legal status at the time of trial," regarding

5

whether he was in the United States legally, and regarding whether the immigration hold was due to him "being present in the United States without legal right to do so."[1]  Further, Espino does not assert on appeal that the allegedly improper advice caused him to reject the plea and proceed to trial or that the outcome of the plea process would have been different had he been given the advice that he believes that he was entitled to.  For these reasons, we do not believe that Espino has shown that his counsel's allegedly deficient representation prejudiced him.

Regarding the first element, we note that Espino raises this claim in a direct appeal. Generally speaking, the record in a "direct appeal will not be sufficient to show that counsel's performance was so deficient" that it satisfies the first element. *Mitchell*, 68 S.W.3d at 642. Ineffective-assistance claims are unlikely to succeed on direct appeal because records on direct appeal are "simply undeveloped and cannot adequately reflect the failings of trial counsel" and will only rarely provide a fair evaluation of the merits of the claim. *Thompson*, 9 S.W.3d at 813-14.  In general, "trial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective," *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003), and appellate courts "should be especially hesitant to declare counsel ineffective based upon a single alleged miscalculation during what amounts to otherwise satisfactory representation," *Thompson*, 9 S.W.3d at 814.  This is particularly true when "the record provides no discernible explanation of the motivation behind counsel's actions—whether those actions were of strategic design or the result

---

[1]  It is worth noting that Espino provides no explanation regarding whether the immigration hold was proper or the result of a mistake.  *Cf. American Teen Mistakenly Deported to Colombia Returns to Texas*, Jan. 6, 2012, http://articles.cnn.com/2012-01-06/us/us_texas-colombia-teen_1_ colombian-officials-flight-attendant-colombian-authorities?_s=PM:US (relating how United States citizen was improperly deported).

6

of negligent conduct." *Id.* The dangers in evaluating an attorney's performance on direct appeal is further compounded in this case because the record only includes the pre-trial hearing in which Espino rejected the State's offer and the punishment hearing: there is no record of the guilt portion of the trial. Because this is a direct appeal, the record does not provide us with any guidance regarding Espino's attorneys' motivations when counseling Espino or regarding his attorneys' understanding of the law or the potential consequences to Espino for accepting the State's plea.

Furthermore, although Espino alleges that there was a clear answer regarding the effect of pleading guilty to driving while intoxicated, Espino does not cite to any governing statutes or cases stating that being convicted of a class A misdemeanor for driving while intoxicated, particularly after being convicted of two prior driving-while-intoxicated offenses, cannot serve as a basis for deportation.[2] To the contrary, he concedes in his brief that it is possible that a conviction for driving while intoxicated may "result in deportation or in later consequences regarding gaining the legal right to enter the United States." *Cf. Garcia v. Reno*, 234 F.3d 257, 258 & n.2 (5th Cir. 2000) (noting that although court did not need to decide if driving while intoxicated qualifies under section 1227, appellant was deported after receiving third conviction for driving while intoxicated). Accordingly, we are not persuaded that this case presents a situation in which the consequences were so clear that Espino's attorneys' warning fell below reasonable professional norms. *See Padilla*, 130 S. Ct. at 1483. In addition, some of the potential consequences were discussed during the punishment phase of the trial by Craig Griffin, who worked as a "supervisory detention and

---

[2] We do note that Espino did refer to a Supreme Court case concluding that driving while intoxicated is not a crime of violence under the governing deportation statute. *See Leocal v. Ashcroft*, 543 U.S. 1, 11-12 (2004). However, that case did not hold that convictions for driving while intoxicated cannot serve as a basis for deportation under other portions of the statute.

deportation officer for U.S. Immigration and Customs Enforcement." In his testimony, Griffin explained that although Espino was not formally deported to Mexico due to his prior convictions for driving while intoxicated, he was "given a voluntary return on two different occasions." According to Griffin, a voluntary return occurs when the person at issue does not have a serious criminal record and is given the option "to return to their country . . . without having a hearing before a judge." Further, Griffin testified that he intended to initiate deportation proceedings after the trial.

In light of the record before us in this direct appeal and in light of the deferential nature of appellate review of effectiveness claims, we cannot conclude that Espino has satisfied either element under *Strickland* because he has not shown that his attorneys' performance during the pre-trial hearing fell below objective standards of professional norms or that his attorneys' allegedly deficient performance prejudiced him.

For all these reasons, we overrule Espino's sole issue on appeal.

## CONCLUSION

Having overruled Espino's sole issue on appeal, we affirm the judgment of the district court.

_____

David Puryear,  Justice

Before Justices Puryear, Henson, and Goodwin

Affirmed

Filed:   August 30, 2012

Do Not Publish