DYK, Circuit Judge,
dissenting.
Like the majority, I find problematic the government’s arguments here that breaking and entering and possession of burglar’s tools constitute crimes of violence under 18 U.S.C. § 16. I part company with the majority when it holds that Massachusetts ABDW is not a crime of violence.
This court has previously held in United States v. Hart, 674 F.3d 33, 40-44 (1st Cir.2012), and United States v. Glover, 558 F.3d 71, 79-82 (1st Cir.2009), that Massachusetts ABDW is a “violent felony” under the Armed Career Criminals Act (ACCA), 18 U.S.C. § 924(e)(2)(B) and a “crime of violence” under the United States Sentencing Guidelines, U.S.S.G. § 4B1.2(a). The question in this case is whether Massachusetts ABDW — assault and battery with a dangerous weapon — is similarly a “crime of violence” under Section 16(b).[12] The *19 majority, deciding not to follow Glover and Hart, holds that Massachusetts ABDW is not a “crime of violence” for purposes of Section 16(b), and reverses Fish’s conviction.
Nothing in the language of the three provisions supports such an inconsistent result, and in my view the majority’s decision is directly contrary to the reasoning of this court’s decision in Hart, reasoning which the majority dismisses as “dictum.” Majority Op. at 12. In my view the majority’s decision is also inconsistent with the Supreme Court’s decision in James v. United States, 550 U.S. 192, 208, 127 S.Ct. 1586, 167 L.Ed.2d 532 (2007). I respectfully dissent.
I.
When a federal statute makes reference to crimes defined by state law in order to determine what constitutes a crime of violence or violent felony under federal law, courts apply a “categorical approach” to determine whether the state law crime meets the federal definition. See, e.g., Descamps v. United States, — U.S. -, 133 S.Ct. 2276, 2281, 186 L.Ed.2d 438 (2013); James, 550 U.S. at 202, 127 S.Ct. 1586; Taylor v. United States, 495 U.S. 575, 588-89, 600-02, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990). The court must consider the state law crime generically, i.e., with “a focus on the elements, rather than the facts, of a crime,” Descamps, 133 S.Ct. at 2285, except to the extent that the statute of conviction is divisible and the charging and similar documents reveal under which subdivision of the statute the conviction was obtained. See id. at 2281, 2285 n. 2. The government does not rely on such documents here.
Section 16(b) defines a crime of violence as an offense that “is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.” This language has been interpreted to require a higher degree of intent than is present in “merely accidental or negligent” applications of physical force. Leocal v. Ashcroft, 543 U.S. 1, 11, 125 S.Ct. 377, 160 L.Ed.2d 271 (2004). The majority holds that the inclusion of reckless conduct, such as reckless driving, within Massachusetts ABDW excludes ABDW from the definition of Section 16(b). But the categorical approach does not require a court to consider “every conceivable factual offense” covered by the state statute. James, 550 U.S. at 208, 127 S.Ct. 1586. When applying a federal statute that contains “inherently probabilistic” language such as “potential risk of injury,” under James courts consider only “the conduct encompassed by the elements of the [statute of conviction] in the ordinary case.” Id. at 207, 208, 127 S.Ct. 1586 (emphasis added).
II.
This court in Glover held that “the ordinary ABDW offense” is a crime of violence under the Sentencing Guidelines. Glover, 558 F.3d at 82. Hart applied Glovers holding to the ACCA. 674 F.3d at 41-42. In my view, Hart disposes of this case by holding that reckless driving, while within the scope of the ABDW statute, is not the ordinary case under James and does not prevent ADBW from being a crime of violence under the categorical approach.[13]
*20 The precise question in Hart was whether ABDW is a violent felony under the residual clause of the ACCA, which encompasses felony offenses that “present[] a serious potential risk of physical injury to another” and are similar in kind to certain listed offenses such as burglary, arson, and extortion. 18 U.S.C. § 924(e)(2)(B)(ii); Hart, 674 F.3d at 41. To be similar to the enumerated offenses, a crime must “ ‘typically involve purposeful, violent, and aggressive conduct.’ ” Id. at 41 (quoting Begay v. United States, 553 U.S. 137, 144-45, 128 S.Ct. 1581, 170 L.Ed.2d 490 (2008)). The defendant in Hart argued that Massachusetts ABDW failed that requirement because a conviction could rest on reckless conduct such as drunk driving. 674 F.3d at 43. The court nonetheless concluded that “a composite of purposeful, violent, and aggressive conduct is the norm” under Massachusetts ABDW. Id. at 44.
In reaching that conclusion, the Hart court specifically rejected the ground on which today’s majority rests:
It is true that an ABDW conviction may rest on a recklessness theory, and it is not insignificant that reckless ABDW may be committed with a seemingly innocent object used in a dangerous fashion, as in the case of reckless, vehicular ABDW. But this fact pattern does not represent the vast majority of ABDW convictions, and our analysis under the residual clause is explicitly, and necessarily, limited to the “ordinary case.”
Id. at 43 (footnotes and citations omitted) (quoting James, 550 U.S. at 208, 127 S.Ct. 1586). This same point was reiterated on the very next page of the opinion:
ACCA’s enumerated offenses must only typically involve purposeful conduct, and so we must look to the usual circumstances of the crime, not allowing hypothetical fact patterns to negate commonsense. In considering the “ordinary case” of ABDW, we must conclude that a composite of purposeful, violent, and aggressive conduct is the norm.
Id. at 44 (quoting James, 550 U.S. at 208, 127 S.Ct. 1586) (citations, alterations, and internal quotation marks omitted). Thus, Hart twice concluded that reckless ABDW is not the ordinary case under James. This panel is bound to follow Hart. In addressing the residual clause of Section 16(b), which does not differ from the ACCA’s residual clause in any relevant respects, the court need not concern itself with reckless ABDW because it “does not represent the vast majority of ABDW convictions.” Id. at 43.
The majority suggests that Hart’s discussion of the ordinary case was “dictum.” Majority Op. at 12. I disagree. Begay specifically held that drunk driving is outside the scope of the purposeful, violent, and aggressive conduct requirement of the ACCA, 553 U.S. at 144-45, 128 S.Ct. 1581,[14] and other courts of appeals have agreed that the ACCA definition of “violent felony” does not include reckless conduct, e.g., United States v. Smith, 544 F.3d 781, 782 (7th Cir.2008); United States v. Morris, 527 F.3d 1059, 1061 (10th Cir.2008); see also United States v. Herrick, 545 F.3d 53, 59-60 (1st Cir.2008) (concluding that an offense requiring “criminal negligence” did not meet the purposeful, violent, and aggressive conduct requirement of Begay). Hart could find that *21 Massachusetts ABDW was a “violent felony” under the ACCA only by finding that reckless driving was not the ordinary case under James (itself a case under the ACCA residual clause), which is exactly what Hart did. See 674 F.3d at 43-44. The James ordinary case discussion in HaH was not dictum.
The majority appears to suggest that HaH unnecessarily applied James’s “ordinary case” standard because it should have applied Begay’s “typical! ]” case standard, which is more “permissive.” Majority Op. at 12, 13, 14 n. 8. Of course, that is contrary to HaH, which viewed the James and Begay standards as being the same. 674 F.3d at 43-44; see also United States v. Dancy, 640 F.3d 455, 470 (1st Cir.2011). It is also contrary to the views of at least two other circuits which treat Begay and James interchangeably. United States v. Dismuke, 593 F.3d 582, 594 (7th Cir.2010) (under the ACCA, court must ask whether the crime, “in the ordinary or typical case,” meets both prongs of Begay); United States v. Stinson, 592 F.3d 460, 466 (3rd Cir.2010) (“[W]e must determine whether the ‘ordinary’ or ‘typical’ fact scenario ... is sufficiently ‘purposeful, violent, and aggressive’ to qualify as a crime of violence after Begay.” (citing both Begay and James)). Contrary to the majority, Begay’s “typical! ]” case is not different from James’s “ordinary case.”
There is also no basis for applying the ordinary case rule differently to Section 16(b) than the ACCA. The ACCA defines a “violent felony” as a crime that “is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.” § 924(e)(2)(B)(ii). Section 16(b) defines a “crime of violence” as an “offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.” Both statutes require purposeful action; both statutes exclude negligent conduct. See Begay, 553 U.S. at 144-45, 128 S.Ct. 1581; Leocal, 543 U.S. at 11, 125 S.Ct. 377.
I do not think the ACCA and Section 16(b) are “materially different statute[s],” as the majority suggests. Majority Op. at 13. As I see it, there are only two differences between the two provisions: one, the ACCA enumerates certain offenses while Section 16(b) does not, and two, the ACCA refers to a “serious potential risk of physical injury” while Section 16(b) refers to a “substantial risk that physical force against the person or property of another may be used.” Those differences are certainly important. See Leocal, 543 U.S. at 10 n. 7, 125 S.Ct. 377; Aguiar v. Gonzales, 438 F.3d 86, 88 (1st Cir.2006). But neither difference suggests that the “ordinary case” inquiry under James should be different under the two provisions, or that HaH’s analysis of the ordinary case of ABDW as to the ACCA should not apply to Section 16(b).
III.
The majority also suggests that HaH was wrongly decided because its application of James was too broad, and should have excluded only “fanciful, hypothetical scenarios.” Majority Op. at 6; see also id. at 13. But James did not define the inquiry so narrowly. The Court defined “the proper inquiry” as “whether the conduct encompassed by the elements of the offense, in the ordinary case, presents a serious potential risk of injury to another.” 550 U.S. at 208, 127 S.Ct. 1586. The Court cautioned that one can always “hypothesize unusual cases in which even a prototypically violent crime might not present a genuine risk of injury.” Id. To be sure, *22 this means that courts applying the categorical approach to residual clauses need not concern themselves with absurd hypo-theticals. But the examples of “unusual” cases that James gave are not so farfetched. James explained:
One can always hypothesize unusual cases in which even a prototypically violent crime might not present a genuine risk of injury — for example, an attempted murder where the gun, unbeknownst to the shooter, had no bullets. Or, to take an example from the offenses specifically enumerated in [the ACCA], one could imagine an extortion scheme where an anonymous blackmailer threatens to release embarrassing personal information about the victim unless he is mailed regular payments. In both cases, the risk of physical injury to another approaches zero. But that does not mean that the offenses of attempted murder or extortion are categorically nonviolent.
550 U.S. at 208, 127 S.Ct. 1586. And, as described above, Begay (following James) looked to the “typical! — ]” case of a crime, 553 U.S. at 144-45, 128 S.Ct. 1581, not to “fanciful, hypothetical scenarios,” Majority Op. at 6.
Other courts have not interpreted James so narrowly as the majority does today. Relying on James, the Ninth Circuit concluded that Oregon’s burglary law meets the ACCA’s residual clause. United States v. Mayer, 560 F.3d 948, 963 (9th Cir.2009). Even though the statute had been applied to the act of entering public phone booths to steal change, the Ninth Circuit found that that was not the ordinary case. See id. at 952-53 (Kozinski, C.J., dissenting from the denial of rehearing en banc).[15] The Second Circuit concluded that Connecticut’s prison rioting statute was a violent felony under the ACCA although in two cases inmates were convicted for non-violent conduct.[16]
Finally, the majority suggests that James is no longer good law after Descamps. See Majority Op. at 14-15. But Descamps only addressed whether courts may consult charging and similar documents when a defendant was convicted under an indivisible statute. 133 S.Ct. at 2281. Descamps did not discuss James or the ordinary ease rule, and the parties in Descamps never suggested that James should be overruled. We are obligated to follow Supreme Court precedent until it is explicitly overturned. Hohn v. United *23 States, 524 U.S. 236, 252-53, 118 S.Ct. 1969, 141 L.Ed.2d 242 (1998) (“Our decisions remain binding precedent until we see fit to reconsider them, regardless of whether subsequent cases have raised doubts about their continuing vitality.”). James is still good law.
IV.
In my view, the majority’s decision is inconsistent with Hart and James. I respectfully dissent.[17]

. Section 16(b) defines "crime of violence” for purposes of the body armor statute under *19 which this defendant was charged as well as for many other criminal statutes. E.g., 8 U.S.C. § 1227(a)(2)(E)(i) (allowing deportation of any alien who commits a crime of violence against a domestic relation); 18 U.S.C. § 25 (doubling the statutory maximum sentence if a defendant intentionally uses a minor to commit a crime of violence).

. Glover did not explicitly address the reckless driving scenario. 558 F.3d at 82.

. Begay stated: "The listed crimes [in the ACCA] all typically involve purposeful, violent, and aggressive conduct.... By way of contrast, statutes that forbid driving under the influence, such as the statute before us, typically do not.... [U]nlike the example crimes, the conduct for which the drunk driver is convicted (driving under the influence) need not be purposeful or deliberate.” 553 U.S. at 144-45, 128 S.Ct. 1581 (internal quotation marks omitted).

. See also Delgado-Hernandez v. Holder, 697 F.3d 1125, 1129 (9th Cir.2012) ("[W]e too may imagine a non-custodial parent who refuses to return with her children from a vacation abroad, thereby effectuating a kidnapping under § 207, with minimal risk of force. However, we cannot adopt a Pollyannaish outlook at the margins of the statute; the evidence before us is that the ordinary case of kidnapping involves a risk of violence.” (citation omitted)).

. United Slates v. Johnson, 616 F.3d 85, 94 (2d Cir.2010) (quoting James, 550 U.S. at 208, 127 S.Ct. 1586). The court's reasoning was quite similar to Hart:
The fact that some arguably nonviolent conduct — such as a hunger strike — might violate the statute, or even that some convictions under the statute have actually involved nonviolent conduct, is not disposi-tive. We recently held, in United States v. Thrower, that “larceny from the person” is a violent felony under the ACCA. 584 F.3d 70, 74 (2d Cir.2009). We did so notwithstanding the fact that some conduct that is neither violent nor aggressive — such as pickpocketing — would surely be covered by the statute at issue in that case. Similarly, the fact that the sexual assault statute at issue in [United States v. Daye, 571 F.3d 225, 234 (2d Cir.2009) ] could have been applied to the conduct of consenting teenagers did not foreclose a holding that a 'typical instance of this crime’ will indeed involve violent and aggressive conduct.
Id. at 91 (footnote omitted).

. Fish also argues that the body armor statute exceeds Congress's power to regulate interstate commerce. As he appears to concede, that argument was all but foreclosed by Scarborough v. United States, 431 U.S. 563, 97 S.Ct. 1963, 52 L.Ed.2d 582 (1977), which appeared to assume the constitutionality of a similar statute banning felon possession of firearms. Scarborough remains good law, see United States v. Cardoza, 129 F.3d 6, 11 (1st Cir.1997), and I see no basis for distinguishing the body armor statute. Other circuits have upheld the body armor statute on the basis of Scarborough. United States v. Cook, 488 Fed.Appx. 643, 644-46 (3d Cir.2012) (unpublished); United States v. Alderman, 565 F.3d 641, 645-48 (9th Cir.2009); United States v. Scott, 245 Fed.Appx. 391, 393 (5th Cir.2007) (unpublished); United States v. Patton, 451 F.3d 615, 634-36 (10th Cir.2006).